**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BITCO NATIONAL INSURANCE COMPANY f/k/a Bituminous Fire & Marine Insurance Company<br>3700 Market Square Circle<br>Davenport, Iowa 52807<br><br>        Plaintiff,<br>v.<br><br>AMERICAN CONTRACTORS INSURANCE GROUP LTD., ATLANTIC CAISSON CORPORATION, ISRAEL BAPTIST CHURCH, ISRAEL MANOR INC., NEW LIFE ISRAEL, INC., FORRESTER CONSTRUCTION CO., DR. CHUKWULETE UKEEKWE, and GRACE UKEEKWE,<br><br>        Defendants. | Civil No: 1:17-cv-1253 |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT[1]

The Plaintiff, Bitco National Insurance Company f/k/a Bituminous Fire & Marine Insurance Company ("Bitco"), brings this declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* and Fed.R.Civ.P. 57, which authorizes this Court to determine and declare that Bitco owes no duty to defend or afford coverage of claims asserted in and in connection with an underlying civil action brought in the Superior Court for the District of Columbia, docketed at 2016-CA-008468-B ("the underlying action"). Pursuant to Fed.R.Civ.P. 57, Bitco also requests a jury trial, a speedy hearing, and advancement of this action on the calendar.

### PARTIES

---

[1] This Amended Complaint amends only the case caption and Paragraph 1 to insert the correct address for the Plaintiff.

1. Bitco, a corporation engaged in the business of insurance, is an Illinois citizen with a home office located at ~~320 18th Street, Rock Island, Illinois 61201~~3700 Market Square Circle, Davenport, Iowa 52807.

2. Atlantic Caisson Corporation ("Atlantic") is a corporation headquartered at 111 Theatre Road, Glen Rock, Pennsylvania 17327 and doing business in the District of Columbia, including on the construction project referenced hereinbelow. Atlantic provides contractor services in the drilling and foundation services industry.

3. Forrester Construction Company ("Forrester") is a Maryland corporation with its principal place of business located at 12231 Parklawn Drive, Rockville, Maryland 20852. Forrester was the general contractor for the construction project at issue as described below, and is named as a Defendant in the underlying action.

4. Upon information and belief, Israel Baptist Church ("Israel Baptist") is a District of Columbia non-profit corporation with a principal address of 1251 Saratoga Avenue, N.E., Washington, D.C. 20018. Israel Baptist is named as a Defendant in the underlying action.

5. Upon information and belief, New Life Israel, Inc. ("New Life Israel") is a District of Columbia non-profit corporation with a principal address of 1251 Saratoga Avenue, N.E., Washington, D.C. 20018. New Life is named as a Defendant in the underlying action.

6. Upon information and belief, Israel Manor, Inc. ("Israel Manor") is a licensed Charitable Solicitation with a premises address of 1251 Saratoga Avenue, N.E., Washington, D.C. 20018. Israel Manor is named as a Defendant in the underlying action.

7. This Complaint will refer to Israel Baptist, New Life Israel, and Israel Manor collectively as "Israel".

8. American Contractors Insurance Group ("American"), a corporation engaged in the business of insurance, is a corporation engaged in the business of insurance, with its primary place of business located at 2600 North Central Expy #800, Richardson, Texas 75080. During the time period relevant hereto, American was upon information and belief Forrester's and/or Israel's primary liability insurer, having issued one or more policies of liability insurance to Forrester and/or Israel. Upon information and belief, American is authorized to do, and does do, business in the District of Columbia.

9. Upon information and belief, Dr. Chukwelete Ukeekwe ("Ms. Ukeekwe"), a Plaintiff in the underlying action, is an adult individual residing at 2405 12th Street N.E., Washington, D.C. 20018.

10. Upon information and belief, Grace Ukeekwe, a plaintiff in the underlying action, is an adult individual living at 2405 12th Street N.E., Washington, D.C. 20018.

11. This Complaint will refer to Dr. Ukeekwe and Ms. Ukeekwe collectively as "the Ukeekwes".

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that the parties are of diverse citizenship, and the amount in controversy is in excess of $75,000, exclusive of interests and costs, since upon information and belief the cost of defending the underlying action herein described will exceed $75,000, and the damages sought by the Ukeekwes in the underlying action will exceed $75,000.

13. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of events giving rise to the underlying claim took place in Washington, D.C. The construction project at the heart of the underlying claims was the expansion of the Israel Baptist Church, located at 1251 Saratoga Avenue, N.E., Washington, D.C. 20018.

## FACTS
### *The Church Expansion Project*

14. This matter arises out of a construction project to expand the Israel Baptist Church ("the Church") in Washington, D.C.

15. Upon information and belief, the Church is owned and operated by Israel Baptist, Israel Manor, and/or New Life Israel.

16. In or about November 2013, New Life Israel entered into a Prime Contract with Forrester, for Forrester to serve as the general contractor on a construction project to expand the Church. A true and correct copy of that Prime Contract is attached hereto as Exhibit "A".

17. Forrester in turn entered into a subcontract with Atlantic, for Atlantic to serve as a subcontractor on the project. In the subcontract, Atlantic undertook to perform all of the "Caissons Work" called for in the Prime Contract between New Life Israel and Forrester. A true and correct copy of that Master Subcontract Agreement is attached hereto as Exhibit "B".

18. The Master Subcontract Agreement between Forrester and Atlantic contains Section 6, entitled "Indemnity; Insurance Requirements", the pertinent provisions of which state as follows:

> **6. INDEMNITY; INSURANCE REQUIREMENTS.** The Subcontractor specifically obligates itself to the Contractor (Forrester) and Owner (New Life Israel), jointly and severally, in the following respects: … (b) To protect, defend and indemnify them against and save them harmless from any and all claims, costs, expenses (including attorney fees), suits or liability for damage to property, injuries to persons, including death, and from any other claims, suits or liability on account of any act or omission of the subcontractor, or any of its officers, agents, employees, or servants and subcontractors or materialmen, and from any and all loss, damages, costs, expenses and attorney fees arising therefrom…
>
> Without otherwise affecting or reducing the aforesaid indemnity obligation, Subcontractor shall insure said indemnity and all its Work by an insurance carrier satisfactory to Contractor. The Subcontractor shall provide Contractor with a certificate(s) of insurance prior to the commencement of Subcontractor's Work evidencing the purchase of the following coverage and/or any additional coverage as may be required by the Contract Documents:

A. <u>Comprehensive General Liability</u>:

<u>Limits of Liability</u>:   $1,000,000 Each Occurrence

$1,000,000 General Aggregate

$1,000,000 Products-Completed Operations

Including coverage for Independent Contractors Liability, Contractual Liability, Personal Injury Liability, Broad Form Property Damage, including but not limited to completed operations, damage to property below ground, Explosion Collapse, Shoring, Grading and Underground Hazards.  Owner and Contractor shall be named as an Additional Insured by endorsement CG 20-10 11/85 or equivalent.  Coverage provided by this Policy shall be primary and non-contributory with any other insurance that may be available to the additional insureds.  Limits provided by this Policy shall apply on a "per project" basis.  Subcontractor agrees to waive any and all rights of subrogation against the additional insureds.

19.   The Master Subcontract Agreement also includes "Attachment A: Elaboration of Scope of Work", the final section of which states:

**D.   INSURANCE REQUIREMENTS**

1.   Subcontractor shall comply with the Insurance Requirements set forth in Attachment A1 and shall provide the coverage and policy limits set forth therein.

The document entitled "<u>ATTACHMENT A1: Insurance Requirements</u>" in turn states as follows:

**A.   Insurance Requirements**

The information noted below sets forth the insurance required by the Subcontract.  The insurance required herein shall be obtained, endorsed, and maintained at the Subcontractor's sole expense.  Certificate(s) of Insurance along with copies of all endorsements required herein shall be delivered to Contractor prior to site mobilization or commencement of Subcontractor's work.  Subcontractor shall assure that all sub-subcontractors carry identical coverage and additional insured requirements as shown above.  Exceptions may be made only with the written approval of the Contractor.

Subcontractor's agent shall endorse Subcontractor's policy and show the following on the Certificate:

1. **Forrester Construction and New Life Israel, Inc.; Impact CDE 42 LLC; USBCDE Sub CDE 102, LLC; Israel Manor Investment Fund, LLC; USBCDE LLC; U.S. Bancorp Community Development Corporation; and USB NMTC Fund 2011-3, LLC** are additional insureds on all policies except Workers Compensation and Professional Liability. They shall be named additional insureds by endorsement to the policies listed below, with coverage for ongoing and completed operations and products liability coverage. Completed Operations and products liability coverage shall be provided for a period of not less than 5 years following the substantial completion of the project. Additional Insured endorsements shall accompany certificate of insurance.

2. This coverage as additional insureds shall be at least as broad as ISO Form CG 20 10 (11/85). All coverages shall be deemed primary and non-contributory with respect to any other coverages carried by the additional insureds, for liability arising out of subcontractor's operations. There shall be no action-over or similar employee-injury exclusion and no work from heights exclusions.

. . .

4. Policy terms, limits and coverages shall equal or exceed any requirements specified in the Contract Documents or required by law and must be at least:

   a. <u>Commercial General Liability:</u>

      i. $1,000,000 Each Occurrence

      ii. $2,000,000 General Aggregate

      iii. $2,000,000 Products - Completed Operations aggregate.

      Including coverage for Independent Contractors Liability, Contractual Liability, Personal Injury Liability, and Broad Form Property Damage, including but not limited to completed operations, damage to property below ground, Explosion Collapse, Shoring, Grading and Underground Hazards. Coverage provided by this policy shall be primary and non-contributory with any other insurance that may be available to the additional insureds. Limits provided by this policy shall apply on a "per project" basis. Subcontractor

> agrees to waive any and all rights of subrogation against the additional insureds. Waiver of Subrogation endorsement shall accompany certificate of insurance.
>
> . . .
>
> d. <u>Excess Umbrella for all Subcontractors (unless greater amount required by Owner or specified by Forrester due to the nature of the work) shall be a minimum of the following coverages (but actually coverages held by Subcontractor shall be listed on certificate</u>):
>
> i. $5,000,000 Each Occurrence
>
> ii. $5,000,000 Aggregate
>
> Coverages to be provided on a follow form basis over the General Liability, Auto and Employers Liability Coverages and shall be primary and non-contributory. Limits provided by this policy shall apply on a "per project" basis. Subcontractor agrees to waive any and all rights of subrogation against the additional insureds. Waiver of Subrogation endorsement shall accompany certificate of insurance.

### *The Underlying Action*

20. In November 2016, the Ukeekwes filed the underlying action in the Superior Court for the District of Columbia against Forrester and all three "Israel" entities. A true and correct copy of the Ukeekwes' Complaint is attached hereto as Exhibit "C".

21. Atlantic is not named as a Defendant, nor mentioned anywhere in the Complaint.

22. The Complaint alleges that the Ukeekwes have owned the land located immediately adjacent to the Church for over 30 years, and the residence situated thereupon. The gist of the Ukeekwes' action alleges that as a result of the Church expansion project, the construction activities caused the Ukeekwes' neighboring home to sustain flooding, infiltration of mud, excessive noise, vibrations, and other untoward construction-related occurrences. The

Ukeekwes allege that these events have resulted in both property damage and bodily injury to the Ukeekwes.

23. The Complaint contains four (4) Counts for relief. Count I sounds in the intentional tort of trespass and seeks relief for storm water and sediment that infiltrated the Ukeekwes' property and damaged their home. Count II asserts a claim of the intentional tort of trespass seeking relief for the tons of soil that were allegedly piled on the Ukeekwes' property, and the destruction of the Ukeekwes' fence. Count III includes a cause of action for nuisance, arising out of the noise, vibrations, water and sediment that were permitted to repeatedly infiltrate the Ukeekwes' property. Count IV includes a claim "in the alternative" of negligence.

24. In their prayer for relief, the Ukeekwes request (1) a permanent injunction enjoining the Defendants from entering onto, trespassing upon, or otherwise occupying the Ukeekwes' property; (2) an Order that the Defendants must remove any soil, rock, or other material deposited onto the Ukeekwes' property; (3) an Order requiring the Defendants to remove any structure erected on the Ukeekwes' property; (4) compensatory money damages; (5) punitive damages; and (6) costs of suit.

### *Forrester's and Israel's Request For Defense And Indemnification*

25. Bitco received a letter dated December 27, 2016 authored by Grant Turner, a Senior Claims Representative with American. A true and correct copy of the letter is attached hereto as Exhibit "D". In the letter, Mr. Turner requested a defense and indemnity on behalf of Forrester and Israel in connection in the Ukeekwes' civil action.

26. The letter requests a defense and indemnity directly from Atlantic pursuant to the contractual indemnification provision contained in the subcontract documents, and separately requests a defense and indemnity from Bitco as purported additional insureds under the insurance policy issued to Atlantic.

### *The Insurance Policy*

27.     Bitco insured Atlantic under a commercial general liability insurance policy, Policy No. CLP 3 593 520 B, with effective dates of coverage of October 1, 2013 through October 1, 2014 (the "Policy").  A true and correct copy of the Policy is attached hereto as Exhibit "E".  The Policy affords liability coverage in the amount of $1 Million per occurrence.

28.     The Policy was delivered to Atlantic at its Glen Rock, Pennsylvania headquarters address.

29.     The Policy is written on standard Insurance Services Office ("ISO") form CG 0001(04/13).  The Policy's Insuring Agreement states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

30.     The Insuring Agreement goes on to state:

> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)  The "bodily injury" or "property damage" is caused by an "occurrence" …

31.     "Property damage" is defined by the Policy to mean, in pertinent part, "[p]hysical injury to tangible property, including all resulting loss of use of that property".

32.     The term "occurrence" is defined by the Policy to mean "an accident", including continuous or repeated exposure to substantially the same general harmful conditions".

33.     Form CG 0001(04/13) contains several Exclusions. Exclusion 2(a), entitled "Expected Or Intended Injury", states that the insurance does not apply to "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Exclusion 2(b), entitled "Contractual Liability", states in pertinent part that there is no coverage for "'[b]odily

injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The basic coverage form also contains Exclusion 2(f) applicable to "pollution", and the Policy is endorsed with Form L2399b(10/01), entitled "Limited Pollution Coverage -- 'Work Sites'," also relating to pollution. The exclusion, Exclusion 2(f) to the basic coverage form, states in pertinent part that the insurance does not apply to:

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
>    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured…
>        . . .
>    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
>    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
>        i. Any insured; or
>        ii. Any person or organization for whom you may be legally responsible; or
>    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.…
>        . . .
>    (e) At or from any premises, site of location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".
>
> (2) Any loss, cost or expense arising out of any:
>
>    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

The "Limited Pollution Coverage" endorsement form, L-2399b (10/01), states in pertinent part:

Each Pollution Incident Limit  $100,000

. . .

    a. We will pay those sums that the insured becomes legally obligated to pay:

        (1)    As damages because of:
                (a) "bodily injury"; or
                (b) "property damage"; or
        (2)    As "clean up costs" because of "environmental damage" which directly results from physical injury to tangible property;

to which this insurance applies. We will have the right and the duty to defend any "suit" seeking those damages.

. . .

b. This insurance applies to "bodily injury," "property damage," and "environmental damage" only if:

        (1)    The "bodily injury," "property damage," or "environmental Damage" is caused by a "pollution incident:"
                (a) on or from a "work site" in the coverage territory," and
                (b) that begins and ends within 72 hours of the incident;
. . .

2.    Exclusions.

The insurance provided by this endorsement does not apply to:

a. "Bodily injury," "property damage," or "environmental damage" expected or intended from the standpoint of the insured.

    b. "Bodily injury," "property damage," or "environmental damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a Contract or agreement.

        . . .

l.    "Bodily injury," "property damage," or "environmental damage" arising out of a "pollution incident" which results from or is directly or indirectly attributable to failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any government body, provided that failure to comply is a willful or deliberate act or omission of:

    (1)        An insured; or

        . . .

1.    Paragraph 2.a., Duties In The Event Of Occurrence, Offense, Claim or Suit, you must see to it that we are notified **immediately** of any "pollution incident" which may result in a claim.

        . . .

E.    The following definitions are added to SECTION V - DEFINITIONS.

    "Clean up costs" means expenses for testing for, monitoring, removal or neutralization of "pollutants".

    "Environmental damage" means the injurious presence of "Pollutants" in or upon land, the atmosphere, or any water course or body of water.

    "Pollution incident" means the actual emission, discharge, release, or escape of "pollutants" on or from a "work site" provided that such emission, discharge, release, or escape results in "environmental damage." The entirety of any such emission, discharge, release, or escape will be deemed to be one "pollution incident".

        . . .

    "Work site" means any site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations "Work site" does not include any premises, site or location which is or was at any time.

      a.  owned or occupied by or rented or loaned to the named insured.

The term "pollutants" is defined by the Policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, sip, fumes, acids, alkalis, chemicals and waste [including] materials to be recycled, reconditioned or reclaimed."

34.    Of particular significance to this declaratory judgment action, the Policy is endorsed with two additional insured endorsements. The first is Form GL-4667 (01/11), entitled "Additional Insured - - Owners, Lessees or Contractors". That endorsement states in pertinent part as follows:

    A.  Section II -- Who Is an Insured is amended to include as an additional insured any person or organization who is required by written contract to be an additional insured on your policy, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury-caused, in whole or in part, by:

    1.  Your acts or omissions; or

    2.  The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured(s) at the project(s) designated in the written contract.

    B.  With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

    1.  All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

. . .

This insurance is excess of all other insurance available to the additional insured, whether primary, excess, contingent or on any other basis, unless the written contract requires this insurance to be primary. In that event, this insurance will be primary relative to the insurance policy(s) which designate the additional insured as a Named Insured in the Declarations and we will not require contribution from

such insurance if the written contract also requires that this insurance be non-contributory.

35. Second, the Policy is endorsed with Form GL-4665 (01/11), entitled "Additional Insured -- Owners, Lessees or Contractors -- Completed Operations". That form states in pertinent part as follows:

> Section II -- Who is an Insured is amended to include as an additional insured any person or organization who is required by written contract to be an additional insured on your policy for completed operations, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the project designated in the contract, performed for that additional insured and included in the products-completed operations hazard".
> This insurance is excess of all other insurance available to the additional insured, whether primary, excess, contingent or on any other basis, unless the written contract requires this insurance to be primary. In that event, this insurance will be primary relative to insurance policy(s) which designate the additional insured as a Named Insured in the Declarations and we will not require contribution from such insurance if the written contract also requires that this insurance be non-contributory.

**COUNT I**
**Declaratory Relief - - No Coverage Of Claims Asserted**
**Against Forrester And The Israel Entities In The Underlying Action**

36. Bitco incorporates by reference all of the above averments as if fully set forth herein.

37. Bitco owes no duty to defend Forrester or the Israel entities or provide any coverage in the underlying action for the following reasons:

  a. Israel Manor and Israel Baptist do not qualify as additional insureds under the Policy as there is no contract requiring them to be named as such;

  b. The Ukeekwes make no allegations whatsoever concerning Atlantic or its work, acts, or omissions, and accordingly Bitco owes no duty to defend Forrester or the Israel entities as purported additional insureds under the Form GL-4665 and GL-4667 endorsements to the Policy;

    c. The averments of the Ukeekwe Complaint allege no "occurrence" defined as "an accident", but rather allege that the actions undertaken by Forrester and Israel were intentional acts, which are not covered and are excluded under the Policy;

    d. To the extent the claims asserted in the underlying action are premised upon allegations of damages caused by "pollution", any coverage otherwise afforded by the Policy is nonetheless excluded by the "pollution exclusion", Exclusion 2(f) and Form L-2399b (10/01) of the Policy;

    e. The Ukeekwes' claims for injunctive relief and non-compensatory damages, including punitive damages, are not within the scope of the Policy and/or are excluded;

WHEREFORE, Bitco demands judgment against all Defendants in the nature of a declaration that Bitco owes no coverage and no duty to defend Forrester and the Israel entities in the underlying action.

## **COUNT II**
### **Declaratory Relief - - No Coverage Of Contractual Indemnity Claim Asserted Against Atlantic**

    38. Bitco incorporates all averments above as though set forth at length and in full herein.

    39. Bitco owes no coverage of the contractual indemnity claims asserted by Forrester and the Israel entities against Atlantic, for any of the reasons set forth hereinabove in Count I that are applicable to the contractual indemnity claim, and also the following reasons:

    a. The claim is not within the scope of coverage afforded by the Policy;

    b. Coverage is excluded by exclusion 2(b) applicable to "Contractual Liability".

WHEREFORE, Bitco respectfully requests judgment in its favor together with a declaration that Bitco owes no coverage of the contractual indemnity claims asserted against Atlantic by Forrester and the Israel entities.

Dated: <ins>July 14, 2017</ins><del>June 26, 2017</del>    Respectfully submitted,

/s/
_____
Richard W. Driscoll (436471)
DRISCOLL & SELTZER, PLLC
300 N. Washington St., Suite 610
Alexandria, Virginia 22314
703.822.5001 Telephone
703.997.4892 Facsimile
Email: rdriscoll@driscollseltzer.com

*Counsel for Plaintiff*
*Bitco National Insurance Company*